IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

TIMOTHY TIELKE and MELISSA ANN §
TIELKE,                        §
                               §
            Plaintiffs,        §
                               §
VS.                            §   CIVIL ACTION H-12-2
                               §
BANK OF AMERICA, N.A., successor§
to BAC HOME LOANS SERVICING, LP,§
                               §
            Defendant.         §

## <u>OPINION AND ORDER GRANTING SUMMARY JUDGMENT</u>

Pending before the Court in the above referenced cause, removed from state court on diversity and federal question jurisdiction, but now alleging in an amended complaint (instrument #7) harassing debt collection in violation of the Texas Debt Collection Act ("TDCA") and breach of escrow agreement relating to a home equity mortgage, is Defendant Bank of America's motion for summary judgment (#14).

### Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which movant bears the burden of proof at trial; a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set

forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc,*, 144 F.3d 377, 380 (5th Cir. 1998).   Conclusory allegations unsupported by evidence will not preclude summary judgment.  *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'"  *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48 (1986).  "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'"  *Id., quoting Liberty Lobby*, 477 U.S. at 252.  The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'"  *Id.*, *quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986).   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S.  at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

The court must consider all evidence and draw all inferences

from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

**Allegations of the First Amended Original Complaint (#7)**

Plaintiffs Timothy Tielke and Melissa Ann Tielke allege that in 2003 they obtained a home equity mortgage at 3919 Flintrock Court, Sugar Land, Texas 77479.  Initially Countrywide began servicing the loan, then BAC Home Loans Servicing LLC until July 1, 2011, after which Bank of America, National Association, Successor to BAC Home Loans Service, LP ("BANA"), took over those duties. The Tielkes claim that over the years all the loan servicers committed accounting and factual errors.

Plaintiffs filed Chapter 13 bankruptcy on November 1, 2004. As part of their plan, they reaffirmed their mortgage and continued with monthly payments of $670.62 for the mortgage along with payments of $37.00 to satisfy an existing arrearage of $2,080.00 on the mortgage.  They were discharged from bankruptcy in April 2011. As of May 23, 2011, BANA indicated that the monthly payment due was $670.62, with an escrow amount of $0.01 and "outstanding late charges" of $100.59, for which it provided no explanation. Plaintiffs paid these amounts in June and July 2011.

Plaintiffs claim that in July 2011 BANA erroneously obtained force placed homeowner insurance on the property even though

-4-

coverage already existed.  Although Plaintiffs submitted copies of the declaration pages to BANA a number of times, BANA refused to reverse the charge for the force placed insurance.  Moreover, in July 2011 BANA also recalculated the escrow account for the mortgage, using the unnecessary insurance premium as part of the projected increase, resulting in monthly payments of $1,451.43. Plaintiffs tried to resolve the matter and continued to pay $670.62 monthly.  BANA accepted the payments, but applied them to months out of sequence or to a suspense account.  Based on the erroneous arrearage, BANA continually made collection calls, often six times a day, from June 2011 until September 2011, causing Plaintiffs emotional anguish, in violation of the Texas Debt Collection Act and Texas Financial Code §392.302(4).[1]  They also contend that BANA

---

[1] Section 392.302 provides,

In debt collection, a debt collector may not oppress, harass, or abuse a person by:

(1) using profane or obscene language or language intended to abuse unreasonably the hearer or reader;

(2) placing telephone calls without disclosing the name of the individual making the call and with the intent to annoy, harass, or threaten a person at the called number;

(3) causing a person to incur a long distance telephone toll, telegram fee, or other charge by a medium of communication without first disclosing the name of the person making the communication; or

(4) causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number.

breached the escrow agreement, which is a contractual obligation to preserve funds and disburse them as authorized by Plaintiffs to pay insurance and property taxes, by obtaining force placed insurance on their home when coverage already existed and by paying property taxes out of sequence, thus causing an escrow shortage in the amount of $5,462.32.

Plaintiffs seek statutory damages in the amount of $5,000.00, actual damages in the amount of $200,000.00, an award of $20,000.00 for mental anguish, reasonable and necessary attorney fees, costs of court, legal expenses, and pre- and post-judgment interest.

### BANA's Motion for Summary Judgment (#14)

BANA moves for summary judgment as a matter of law on the grounds that Plaintiffs' breach of contract claim fails because they defaulted on their mortgage loan by failing to make their July 2011 payment or any monthly payments thereafter and their TDCA claim fails because BANA is pursuing its lawful and contractual right to non-judicial foreclosure.

With supporting evidence, BANA explains that Plaintiffs executed a $100,800 Texas Home Equity Note on May 1, 2003, secured by a lien on their property as outlined in the Texas Home Equity Security Instrument of the same date.  Ex. A, Decl. of Judy K. Johnson, BANA Senior Operations Manager, at ¶ 4, and Exs. A-1 (copy of Texas Home Equity Note executed by Tielke on May 1, 2003) and A-2 (copy of Texas Home Equity Security Instrument executed by Tielke

on May 1, 2003).  Bank of America states that it received numerous cancellations from Plaintiffs' insurance carrier and sent notices to the Tielkes, Exs. B-1 to B-8, requesting proof that an acceptable insurance policy was in place or warning that the loan servicer would purchase insurance for which Plaintiffs would be billed.  Ex. B, Decl. of Ryan Dansby, Bank of America's Assistant Vice President:  Operations Team Lead.  Each time Plaintiffs would reinstate their hazard insurance before BANA's payment of the Lender-Placed insurance ("LPI").  Exs. B at ¶¶ 5-6, B-1 through B-8.  On June 22, 2011, BANA received a homeowners hazard insurance policy cancellation from Plaintiff's insurer, Amica Lloyds of Texas indicating that Plaintiffs' policy was cancelled due to non-payments.  Exs. A-5 at pp. 26; B at ¶¶ 5-6, B-1 through B-8.  Pursuant to Section 5 of the Security Instrument, LPI was requested on July 5, 2011, but was canceled on July 13, 2011 when BANA received a hazard insurance policy restatement notice from Amica Lloyds of Texas.  *Id.*

Nevertheless Plaintiffs defaulted by failing to make their monthly mortgage payment.  BANA sent a default notice to Plaintiffs at their last known address, 3919 Flintrock Court, advising them they were in serious default and indicating that they could cure the default by paying $2,112.48 by July 6, 2011.  Exs. A at ¶ 10, A-3, A-4.  The notice included a toll-free telephone number for additional information and warned Plaintiffs that if they did not

cure the default as indicated, their mortgage payments would be accelerated and the full amount would be due and payable in full. *Id.* It further stated that if the default was not cured, BANA would be entitled to collect its costs and reasonable attorneys' fees from them. *Id.* In addition the notice informed Plaintiffs that they had the right to contest the default, including the right to sue BANA. Plaintiffs failed to cure their default and as of September 13, 2012, they had not made any payments beginning with the July 2011 payment. Exs. A at ¶ 11, A-3, and A-5. They filed this suit in state court on November 30, 2012.

BANA maintains that Plaintiffs fail to state a claim under the TDCA because Plaintiffs' claims under the statute are preempted by the National Bank Act since Bank of America is a national banking associate. 12 U.S.C. §§ 21, *et seq.*; *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 13 (2007)("[S]tate law may not significantly burden a national bank's exercise of its real estate lending power, just as it may not curtail or hinder a national bank's efficient exercise of any other power, incidental or enumerated. . . . In particular, real estate lending, when conducted by a national bank, is immune from state visitorial control."); *Martinez v. Wells Fargo*, 598 F.3d 549, 555 (9th Cir. 2010)(holding that "Except where made applicable by Federal law, state laws that obstruct, impair or condition a national bank's ability to fully exercise its federally authorized real estate lending powers" are preempted),

citing 12 C.F.R. 34.4(a); *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256 (1995); *Martinez*, 598 F.3d at 555.

Furthermore an essential element of Plaintiffs' TDCA claim is a misrepresentation about the collection of a debt, i.e., the defendant must have made a false or misleading assertion. *Reynolds v. Southwest Bell Tel., LP*, No. 2-05-356-CV, 2006 WL 1791606, at *6-7 (Tex. App.--Fort Worth June 29, 2006, pet. denied). BANA insists that Plaintiffs have not and cannot allege any set of facts showing that BANA "us[ed] a deceptive means to collect a debt" or "threaten[ed] to take an action prohibited by law." Tex. Fin. Code §§ 392.304(a)(19)[2] and 392.301(a)(8).[3] BANA maintains that it is only pursuing its lawful contractual right to non-judicial foreclosure under the Security Instrument; the TDCA "does not prevent a debt collector from . . . exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." *Id.* at §

---

[2] Section 392.304(a)(19) provides, "Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practice[] . . . (19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.

[3] Section 392.301(a)(8) provides, "In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices: . . . (8) threatening to take an action prohibited by law."

392.301(b)(3). Debt collection can include "actions taken in foreclosing real property." *Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2414-B, 2012 WL 555155, *7 (N.D. Tex. Feb. 21, 2012). *See also Broyles v. Chase Finance*, Civ. A. No. 3:10-CV-2256-G, 2011 WL 1428904, *3 (N.D. Tex. Apr. 13, 2011)(rejecting TDCA claim in non-judicial foreclosure because "the Finance Code expressly allows a debt collector to threaten to exercise or exercise a contractual or statutory remedy"), *citing* Tex. Fin. Code Ann. § 392.301(b)(3); *Voth v. Fed. Nat'l Mortg. Ass'n,* No. 3-10-CV-2116-G-BD, 2011 WL 1897759, *4 (N.D. Tex. Apr. 22, 2011)("Because BAC had a statutory right to foreclose on plaintiff's property and exercised that right in a procedurally correct manner, there is no violation of the TDCA or the DTPA."), *report and recommendation adopted*, 2011 WL 1897271 (N.D. Tex. May 18, 2011)(*citing Broyles*); *McAllister v. BAC Home Loans Servicing, LP*, No. 4:10-CV-504, 2011 WL 2200672, *8 (E.D. Tex. Apr. 28, 2011)("The TDCA does not prevent a debt collector from 'exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings."); *Sweet v. Wachovia Bank & Trust Co.*, No. 3:03-CV-1212R, 2004 WL 1238180, *3 (N.D. Tex. Feb. 26, 2004)(same).

BANA notes that while Plaintiffs complain of repeated telephone calls from it, they offer no evidence that BANA did anything more than attempt to collect the debt owed or advise

Plaintiffs that they faced non-judicial foreclosure unless they cured their default.  Because Plaintiffs failed to set out facts establishing a plausible claim for relief under the TDCA, dismissal is appropriate.

Plaintiffs' claims that BANA erred on its accounting and wrongfully obtained LPI insurance on their property are essentially breach of contract claims and fail because "a party to a contract who is in default cannot maintain a suit for breach of contract." *Gulf Pipe Line Co. v. Nearen*, 138 S.W. 2d 1065, 1068 (Tex. 1940)("It is also elementary that a party to a contract who is himself in default cannot maintain a suit for its breach."); *D.E.W., Inc. v. Depco Forms, Inc.*, 827 S.W. 2d 379, 381 (Tex. App.--San Antonio 1992, no writ)(holding party in breach could not maintain suit for breach of contract); *Sproul v. Sasser*, No. 05-08-00502-CV, 2009 WL 2232240, *3 (Tex. App.--Dallas July 28, 2009, no pet. h.)(same).  There is no dispute that Plaintiffs made their June 1, 2011 payment late and have not made any payment since, and thus have defaulted on their mortgage loan.  Exs. A at ¶¶ 11, 13, A-3, A-4, A-6.  Furthermore, they fail to allege any facts showing that BANA owed them any duties other than those set out in the mortgage loan instruments.

Even if they were not in default, the Security Instrument required that they keep the property insured against hazard loss and provide timely notice of insurance to BANA.  Exs. A at ¶ 7; A-2

at ¶ 5.   The Security Instrument also authorized BANA to establish an escrow account and obtain LPI in the event Plaintiffs failed to provide evidence of hazard insurance.  *Id.*  Plaintiffs often failed to provide timely evidence of hazard insurance, and that delay prompted BANA to request LPI coverage.  Exs. A-5, pp. 26-27; B at ¶¶ 5-6; and B-1 through B-8.  Nevertheless because Plaintiffs would reinstate their hazard insurance before BANA paid the LPI premiums, it did not charge Plaintiffs for LPI when it was requested in July 2011.  *Id*.

### Plaintiffs' Response (#15)

Plaintiffs argue that BANA is a debt collector subject to the TDCA; that its claims are not preempted by the National Banking Act ("NBA"); that its right to non-judicial foreclosure is limited because their mortgage is a  home equity loan; and that making multiple harassing collection phone calls in a single day over a four-month period is not a legitimate procedure for non-judicial foreclosure.   They  concede  that  BANA  did  not  make  any misrepresentations during the calls.

Repeating the allegations in their complaint and contending there are material fact issues regarding their mortgage payments, Plaintiffs claim that the statement that they failed to make their mortgage payments beginning in July 2011 is false and claim that BANA failed to apply those payments properly.  Ex. A (Affidavit of Melissa Tielke denying BANA's factual allegations and presenting

her own version of the facts).  BANA further breached the contract
with Plaintiffs by obtaining LPI when it was unnecessary and
refusing to correct errors brought to BANA's attention.  Exs. A, B
(email dated December 27, 2012 from Amica Lloyds' Senior Account
Manager Michelle Dyer to Melissa Ann Tielke stating that there was
no lapse in coverage from October 8, 2005 until August 24, 2011
when she cancelled her policy) and C (email dated December 27, 2012
from State Farm's Jennifer Huysman stating that Plaintiffs' Home
Owner's Policy has been in force as of August 18, 2011 and had no
lapse in payment or coverage from that time up to the date of the
email).  Over the years BANA failed to correct accounting errors
regarding payments made by Plaintiffs.  BANA accepted their
payments for July 2011 and later.  Ex. D (copies of a check to BAC
Home Loans Servicing LP for $675.63 dated June 16, 2011 and a check
to BOA for $670.62 dated July 16, 2011).  They claim that BANA's
action caused an escrow shortage to appear that did not really
exist.  Ex. A.   Whether BANA applied the funds for the period
intended is a question of fact.

     Plaintiffs also contend that there is no complete preemption
of the TDCA by the NBA.  The Office of Comptroller of the Currency
("OCC") issues regulations implementing the NBA and has issued
guidelines controlling the issue raised by BANA.  Addressing debt
collection and citing 12 C.F.R. § 7.4007(c)(4) ("State laws that
are not preempted.  State laws on the following subjects are not

inconsistent with the deposit-taking powers of national banks and apply to national banks to the extent consistent with the decision of the Supreme Court in *Barnett Bank of Marion County, N.A. v. Nelson, Florida Insurance Commissioner, et al.*, 517 U.S. 25 (1996) . . . (4) Rights to collect debts . . . .”),[4] Plaintiffs argue that the TDCA is not preempted.

Finally Plaintiffs contend that because the mortgage is a home equity loan, BANA has only a limited right to non-judicial foreclosure, which does not include harassment of Plaintiffs.  The Texas Supreme Court has issued “Procedures Related to Home Equity Loan Foreclosure” (“Procedures”) after the Legislature enacted section 51.002 of the Property Code permitting non-judicial foreclosures.  These Procedures provided that “a party seeking to foreclose a home equity loan has three options:  ‘(1) a suit seeking judicial foreclosure; (2) a suit or counterclaim seeking a final judgment which includes an order allowing foreclosure under the security instrument and Tex. Prop. Code § 51.002; or (3) an application under Rule 736 for an order allowing foreclosure.’” *Huston v. U.S. Bank Nat’l Ass’n*, 359 S.W. 3d 679, 682 (Tex. App.-- Houston [1st Dist.] 2011), citing Tex. R. Civ. P. 736.  Plaintiffs insist that BANA did none of these three things, but instead made multiple harassing collection phone calls to the consumer on a

_____

[4] Cited in *Monroe Retail, Inc. v. Charter One Bank, N.A.*, 624 F. Supp. 2d 677, 686 (N.D. Ohio 2007).

daily basis for four months; such conduct is not a legitimate procedure for non-judicial foreclosure, but simply debt collection. *See* Tex. Fin. Code Ann. §§ 392.001(6)("'Debt collector' means a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts.") and 392.302(4)("In debt collection, a debt collector may not oppress, harass, or abuse a person by . . . causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number."). Plaintiffs maintain that BANA (through its employees and agents) is a debt collector under Texas law and satisfies the "repeated" harassment element under the TDCA. They do not claim that BANA made any misrepresentations during these collection calls.

### BANA's Reply (#16)

Insisting that Plaintiffs' response fails to raise a genuine issue of material fact about their default, BANA argues with supporting documentation that of the copies of eight checks that Plaintiffs claim they sent to BANA, the first three (#15, attachments 4-6, each in the amount of $670.02), although made in June, July, and August 2011, were received and posted in payment of Plaintiffs' delinquent April, May and June 2011 payments, corroborating BANA's payment history. #14, Attachments 5 & 6

-15-

(payment history); #16, Ex. C at ¶ 11 (second Johnson affidavit). Plaintiffs' Home Equity Security Instrument authorizes BANA to apply Plaintiffs' payments, if sufficient in amount, toward delinquent amounts due, so these payments were lawfully applied to delinquent months of April, May and June 2011. #14, Attachments 3-6; #16, Ex. C at ¶ 11. Plaintiffs admit that one check in October 2011 was refunded and three others in November and December 2011 and January 2012 were returned uncashed because they were insufficient to cure the default. #15, attachment 1 at p.2 and attachments 7-1; #16, Ex. C at ¶¶ 12-15. The funds from the last check of March 2012 were placed in a suspense account pending resolution of the lawsuit because the loan had already been referred to foreclosure counsel. #16, Ex. C at ¶ 16.

BANA points out that the Default Notice (#14, attachment 7) and Notice of Acceleration (#16, Ex. C at ¶¶ 8-9, C-1 and C-2), delivered to Plaintiffs, advised them that any payment made to cure their default had to be made with certified funds. Thus the personal checks sent to BANA after October 1, 2011 were insufficient to cure Plaintiffs' default. BANA is not required to accept partial payments or payments made with non-certified funds.

Furthermore Plaintiffs' breach of contract claim, based on allegations that BANA erred in its accounting and wrongfully obtained LPI on their property, still fails because they have not made their July 1, 2011 payment nor any payment after that and are

in default on their mortgage.  "[A] party to a contract who is in default cannot maintain a suit for breach of contract." *Sproul*, 2009 WL 2232240 at *3.  Their breach of escrow account claim also fails as a matter of law because Plaintiffs have presented no proof that they were charged any premium for the LPI.  The Security Instrument required Plaintiffs to keep the property insured against hazard loss and to provide timely notice of insurance to BANA. #14, Attachments 1 at ¶ 7, 3 at ¶ 5.  It also authorized BANA to establish an escrow account and to obtain LPI if Plaintiffs failed to do so.  As noted, they repeatedly failed to provide timely notice of their proof of hazard insurance.  #14, Attachment 12-20. Although BANA obtained LPI, it did not charge Plaintiffs a premium for it.  #14, attachment 12 at ¶¶ 5-6.

Moreover, even if Plaintiffs' TDCA claim is not preempted, it fails as a matter of law because they have submitted no evidence showing that BANA made repeated telephone calls with the intent to harass.  Furthermore, BANA recorded its contacts with Plaintiffs in its Loan Servicing Notes, which do not show the claimed numerous daily calls, but in fact negate that claim.  #16, Ex. D. Furthermore Plaintiffs have failed to show intent.  The TDCA "does not prevent a debt collector from . . . exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." *Swim v. Bank of America*, 2012 WL 170758, *7 (N.D. Tex. 2012).  *See*

-17-

*also* Tex. Fin. Code Ann. § 392.301(b)(3).

Plaintiffs also provide no evidence to support their claim for damages for mental anguish.   The Texas Supreme Court as opined, "Without intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties, we permit recovery for mental anguish in only in a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result.   These include suits for wrongful death and actions by bystanders for a close family member's serious injury." *City of Tyler v. Likes*, 962 S.W. 2d 489, 496 (Tex. 1997).  The relationship between a mortgagor and a mortgagee is not a "special relationship" under Texas law. *Cole v. Hall*, 864 S.W. 2d 563, 568 (Dallas--1993, writ dism'd w.o.j.).  Moreover the economic loss doctrine bars tort claims when the parties' relationship and attendant duties arise from a contract.  *Roubinek v. Select Portfolio Servicing, Inc.*, 3:11-CV-3481-D, 2012 WL 2358560, *3, 5 (N.D. Tex.--Dallas, June 21, 2012).

As for BANA's alleged failure to follow the Procedures, BANA points out that Plaintiffs filed their lawsuit before BANA filed its home equity application for foreclosure so the claim is meritless.

In sum because it is undisputed that Plaintiffs did not make their July 1, 2011 mortgage payment or any payment thereafter and because Plaintiffs fail to show that BANA made numerous daily calls

-18-

with the intent to harass or inflict mental anguish on Plaintiffs, there is no genuine issue of material fact for trial and BANA is entitled to summary judgment on all of Plaintiffs' claims.

## Court's Decision

With respect to preemption and the national banking system, which was established by President Abraham Lincoln in part to provide a uniform national currency for the country and to create a market for loans of the federal government, courts have long recognized that the NBA has a preemptive effect.[5]  *See, e.g., Tiffany v. Nat'l Bank of Mo.*, 85 U.S. 409, 413 (1874); *Davis v. Elmira Savings Bank*, 161 U.S. 275, 283 (1896); *Easton v. Iowa*, 188 U.S. 220, 231-32 (1903).  In 1923, the United States Supreme Court held that as instrumentalities of the federal government, "an attempt by a state to define [national banks'] duties or control the conduct of their affairs is absolutely void, wherever such attempted exercise of authority expressly conflicts with the laws of the United States, and either frustrates the purpose of the national legislation or impairs the efficiency of these agencies of the federal government to discharge the duties for the performance of which they were created." *Davis*, 161 U.S. at 283.  In *Barnett Bank v. Nelson*, 517 U.S. 25, 31 (1996), the Supreme Court

---

[5] The Natinal Currency Act, the predecessor to the NBA was passed in 1863, revised and reenacted the next year, and renamed the NBA in 1864.  Raymond Natter and Katie Wechsler, *Dodd-Frank Act and National Bank Preemption:  Much Ado about Nothing*, 7 Va. L. & Bus. Rev. 301, 313 (Fall 2012)("Natter").

established the standard for preemption of state law affecting
national banks:  whether the federal and state statutes are in
"irreconcilable conflict."[6]  Conflict preemption arises in two
circumstances: (1)when it is physically impossible to comply with
both federal and state law; and (2) when state law stands as an
obstacle to achieving the objects of the federal law (also called
"obstacle preemption").  *Bate v. Wells Fargo Bank, N.A. (In re
Bate)*, 454 B.R. 869, 874 (Bkrtcy. M.D. Fla. 2011).  In *Watters v.
Wachovia Nat'l Bank*, 550 U.S. 1, 13 (2007), the high Court
reaffirmed the conflict preemption standard of *Barnett* ("States are
permitted to regulate the activity of national banks where doing so
does not prevent or significantly interfere with the national
bank's . . . exercise of its powers"; it further opined, "state law
may not significantly burden a national bank's own exercise of its
real estate lending power, just as it may not curtail or hinder a
national bank's efficient exercise of any other power, incidental
or enumerated under the NBA." *Id.* at 13, *citing Barnett Bank*, 517

---

[6] The doctrine of preemption arises from the Supremacy Clause
of the United States Constitution which makes federal law the
"supreme law of the land" and state laws that conflict with valid
federal law "without effect."  U.S. Const. art. VI, cl. 2.;
*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992).
Congress shows an intent to preempt state law in three ways: (1)
express preemption, which "occurs when Congress has clearly
expressed an intention to preempt state law"; (2) field preemption,
which "occurs when federal regulation in a legislative field is so
pervasive that it can reasonably be inferred that Congress left no
room for states to supplement it"; and (3) conflict preemption,
described *supra*.  *Bate v. Wells Fargo Bank, N.A. (In re Bate)*, 454
B.R. 869, 874 & nn.17-22 (Bkrtcy. M.D. Fla. 2011).

U.S. at 33-34; Natter at 13.

Nevertheless, "Federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or general purposes of the National Banking Act." *Watters*, 550 U.S. at 11. The Office of the Comptroller of Currency (the "OCC") oversees the business of banking authorized by the NBA, promulgates regulations, and employs its rule making authority to define the national banks' "incidental powers," beyond those enumerated in the statute. *Nations Bank of N.C., N.A. v. Variable Annuity Life Ins.*, 513 U.S. 251, 256 (1995); *Martinez*, 598 F.3d at 555. OCC regulations have the same preemptive effect as the statute and can preempt conflicting state law. Natter at 317; *Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 153 (1982). Among the areas that are generally not preempted because the regulations provide that the states retain the power to regulate national banks therein are contracts, debt collection, acquisition and transfer of property, taxation, zoning, criminal law, and tort law. *Bank Activities and Operations; Real Estate Lending an Appraisals*, 69 Fed. Reg. 1904-2001 (Jan. 13, 2004), codified at 12 C.F.R. pts. 7 and 34. The non-preempted areas include "rights to collect debts." 12 C.F.R. § 7.4008(e)(1)-(8); 12 C.F.R. §34.4(b)(1)-(8)("State laws on the following subjects are not inconsistent with the real estate lending powers of national banks and apply to national banks to the

extent consistent with the decision of the Supreme Court in *Barnett Bank of Marion County, N.A. v. Nelson, Florida Insurance Commissioner, et al.*, 517 U.S. 25 (1996): . . . (5) Rights to collect debts . . . .");  *Bate*, 454 B.R. at 873-74.[7]

The majority of courts addressing the question whether state laws that purport to regulate debt collection activity of national banks have concluded that they are not in conflict with and are not an obstacle to the general purposes of the NBA, nor do they prevent or significantly interfere with the exercise by the national bank of its powers.  Thus these state laws are not preempted.  *See, e.g., Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 324 (4th Cir. 2012)("'debt collection' is treated differently from an extension of credit" and it appears in the savings clause of [12 C.F.R.] § 7.4008(a)[8] as a category of law that is not preempted by the NBA.  The Supreme Court has long recognized that national banks are subject to state law regarding collection of debts."), *citing and quoting Nat'l Bank v. Commonwealth*, 76 U.S. 353, 362

---

[7] The Dodd-Frank Wall Street Reform and Consumer Protection Act., Pub. L. No. 111-203, 124 Stat. 1376 (2010)(codified at 12 U.S.C. §§ 5301, *et seq.*) was signed into law by President Barack Obama on July 21, 2010.  The Act states that it will become effective on its transfer date, July 21, 2011 and that it does not apply to any regulations issued by the OCC regarding the applicability of state law under the federal banking law to any contract entered into on or before July 21, 2010.  12 U.S.C. §5553. Thus it does not apply to this case.

[8] Section 7.4008 is a "savings clause."  *See, e.g., Aguayo v. U.S.* Bank, 653 F.3d 912, 923 (9th Cir. 2011)("Section 7.4008(e)(4) explicitly saves state laws regarding 'rights to collect debts.'").

(1869)("[National Banks] are subject to the laws of the State and are governed in their daily course of business far more by the laws of the State than of the nation.  All their contracts are governed and construed by state laws.  Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on State law."); *Aquayo v. U.S. Bank*, 653 F.3d 912, 923 (9th Cir. 2011)(finding state law was directed to debt collection and therefore not preempted by the NBA under 12 C.F.R. § 7.4008(e)(4)); *Wells Fargo Bank, N.A. v. Boutris*, 419 F.3d 949, 963 (9th Cir. 2005); *Bate*, 454 B.R. at 873-74; *White v. Wells Fargo Bank, NA*, 904 F. Supp. 2d 756, 762 (N.D. Ohio 2012); *Tamburri v. Suntrust Mortgage, Inc.*, 875 F. Supp. 2d 1009, 1018-19 (N.D. Cal. 2012)(state foreclosure laws are not preempted by NBA), *relying on Gerber v. Wells Fargo Bank, N.A.*, CV-11-01083-PHX-NVW, 2012 WL 413997, *8 (D. Ariz. Feb. 9, 2012), *citing Watters*, 550 U.S. at 11 (addressing NBA preemption and concluding banks remain subject to state laws regarding acquisition and transfer of property).

Moreover, BANA is entitled to summary judgment because Plaintiffs have failed to satisfy their burden to show a violation of state collection laws.

After careful review of the applicable law, the record, and the briefs, aside from BANA's preemption argument the Court agrees with BANA that for the reasons and the evidence BANA provided, and

which Plaintiffs have failed to rebut, that BANA has shown that there is no genuine issue as to any material fact and that BANA is entitled to judgment as a matter of law, while Plaintiffs as a matter of law have failed to meet their burden of proof to raise a genuine issue of material fact for trial on their state-law July 9, 2013claims against BANA.  Accordingly the Court

ORDERS that Bank of America's motion for summary judgment (#14) is GRANTED.

**SIGNED** at Houston, Texas, this  12ᵗʰ  day of  July , 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

-24-